UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 4:CR-14-207 |
| v. | : | (Judge        ) |
| JOHN TERRY, M.D.,<br>THOMAS RAY,<br>DAVID HATCH, and<br>STEPHEN HEFFNER, JR.<br>          Defendants | :<br>:<br>:<br>:<br>: | (Electronically Filed) |

INDICTMENT

Count One
(18 United States Code § 1347 and 2)
Health Care Fraud

FILED
SCRANTON
AUG 19 2014
PER _____
DEPUTY CLERK

**THE GRAND JURY CHARGES:**

1. The defendant, JOHN TERRY, M.D. (DR. TERRY), is a medical doctor. For all times relevant to this indictment, DR. TERRY was a licensed medical doctor in the Commonwealth of Pennsylvania with a medical office located at 58 West Avenue, Wellsboro, Pennsylvania.

2. The defendant, THOMAS RAY (RAY), is an adult individual residing in Tioga County, Pennsylvania. For all times relevant to this indictment, RAY was DR. TERRY's patient.

3. The defendant, DAVID HATCH (HATCH), is an adult individual residing in Addison, New York. For all times relevant to this indictment, HATCH was DR. TERRY's patient.

4. The defendant, STEPHEN HEFFNER, JR. (HEFFNER), is an adult

1

individual residing in Tioga County, Pennsylvania. For all times relevant to this indictment, HEFFNER was not DR. TERRY's patient.

5. The Medicare program is a "healthcare benefit program" as defined by Title 18 U.S.C. § 24(b) in that it provides payment for health care services, including prescription medications, on behalf of elderly and disabled individuals. The Medicare program is funded by the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services.

6. The Pennsylvania Medicaid Program is a "healthcare benefit program" as defined by Title 18 U.S.C. § 24(b) in that it provides payment for health care services, including prescription medications, on behalf of eligible low-income individuals with limited income.

7. The Pennsylvania Medicaid Program is jointly funded by the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services and the Commonwealth of Pennsylvania.

8. At all times material to this indictment, DR. TERRY provided services to individual patients who were participants in Medicaid and Medicare health care benefit programs. All of the defendants submitted insurance claims, or caused the submission of insurance claims, to Medicaid and Medicare for payment of services rendered and alleged services rendered.

9. On or about or between January 2010 and continuing through July 2013, both dates being approximate and inclusive, within the Middle District of Pennsylvania and elsewhere, the defendants,

> JOHN TERRY, M.D.,
> THOMAS RAY,
> DAVID HATCH, and
> STEPHEN HEFFNER, JR.

aiding and abetting one another and aided and abetted by one another, together and with others both known and unknown to the grand jury, did knowingly and willfully execute and attempted to execute a scheme and artifice to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by or under the custody or control of any health care benefit program in violation of Title 18, United States Code, Section 1347.

## THE SCHEME

10. DR. TERRY unlawfully provided prescriptions for excessive quantities of Oxycodone and other narcotics to individuals who he knew were not seeking the drugs for any legitimate medical purpose.

11. RAY was DR. TERRY's patient and was in the business of selling the narcotic pain medications unlawfully prescribed to him by DR. TERRY.

12. RAY appeared for repeated office visits with DR. TERRY for the primary purpose of obtaining prescriptions for narcotic pain medications so that he could sell them for a profit. When RAY appeared at DR. TERRY's office, RAY told DR. TERRY which narcotics he wanted and in what quantity. DR. TERRY provided

RAY with prescriptions for the narcotics specifically requested by RAY.

13. DR. TERRY was aware that RAY was selling the prescription pills "on the street." Still, DR. TERRY continued to frequently write prescriptions for RAY for narcotics in excessive quantities and without a legitimate medical purpose and continued to bill Medicaid for office visits involving RAY.

14. On most occasions, no meaningful medical services were provided by DR. TERRY to RAY during the office visits, yet DR. TERRY submitted bills to Medicaid for services purportedly rendered.

15. RAY often obtained prescriptions from DR. TERRY for large quantities of narcotic pain medications within days of each other. At times, RAY billed Medicare. RAY sometimes paid cash, however, for the unlawful prescriptions rather than submit bills to Medicaid in an effort to avoid scrutiny.

16. For example, on or about June 21, 2013, DR. TERRY provided RAY with a prescription for 100 tablets of Oxycodone 30 mgs. RAY had the prescription filled on June 23, 2013 and billed Medicaid. On or about June 24, 2013, DR. TERRY provided RAY with a prescription for 80 tablets of Oxycodone 30 mgs. RAY had the prescription filled on June 24, 2013 and paid cash. On or about July 1, 2013, DR. TERRY provided RAY with a prescription 120 tablets of Oxycodone 30 mgs. RAY had the prescription filled on July 2, 2013 and paid cash. On or about July 5, 2013, DR. TERRY provided RAY with a prescription for 100 tablets of Oxycodone 30 mgs. RAY had the prescription filled on July 6, 2013 and billed Medicaid.

17. DR. TERRY wrote prescriptions for individuals he knew were addicted to drugs and without performing any meaningful medical examination.

18. DR. TERRY wrote prescriptions for pain medications for individuals who were not his patients knowing that Medicare was going to be billed for the unlawful prescription.

19. DR. TERRY caused Medicare to be billed for fraudulent prescriptions intended for someone other than the program's insured. For example, on or about March 29, 2013, DR. TERRY wrote a prescription for a Schedule II controlled substance, to wit: 330 tablets of Oxycodone, 30 mgs. DR. TERRY wrote the prescription to HEFFNER, knowing that HEFFNER was not his patient and that the Oxycodone was not actually intended for HEFFNER. DR. TERRY knew that the Oxycodone was intended for HATCH but wrote the prescription to HEFFNER for the sole purpose of having HEFFNER'S insurance provider (Medicare) pay the costs. On or about April 3, 2013, HEFFNER filled the prescription issued in his name by DR. TERRY. The prescription was filled for 240 tablets because that is the maximum amount for which Medicare would pay at that time. HEFFNER then gave the 240 tablets of Oxycodone 30 mgs to HATCH. Thereafter, Medicare paid for the 240 tablets of Oxycodone received by HEFFNER but actually delivered to HATCH.

In violation of Title 18, United States Code, Section 1347 and 2.

<u>Count Two</u>
21 United States Code, § 841(a)(1)
Possession with Intent to
Distribute a Controlled Substance

**THE GRAND JURY FURTHER CHARGES:**

20. The allegations contained in paragraphs 1 through 19 of this indictment are full incorporated herein.

21. On or about and between January 2010 through July 2013, both dates being approximate and inclusive, in the Middle District of Pennsylvania and elsewhere, the defendants,

**JOHN TERRY, M.D., and
THOMAS RAY**

aiding and abetting one another and aided and abetted by one another, together and with others, did knowingly and intentionally distribute a controlled substance containing Oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a); and within 1,000 feet of the real property comprising the elementary school named Trinity Lutheran School, 53 West Avenue, Wellsboro, PA, in violation of Title 21, United States Code, Section 860.

In violation of Title 21, United States Code, Sections 841(a)(1), 860, and 841(b)(1)(c); and Title 18 United States Code, Section 2.

A TRUE BILL

8-19-14
Date

███████████

PETER J. SMITH
United States Attorney